**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-01046

ANGELIKA CARNES, an individual,
HIROTSUNE TAKAHASHI, an individual,
and MI JOUNG, an individual,

Plaintiffs

v.

COLORADO ORGANIZATION FOR VICTIM ASSISTANCE, a Colorado corporation,
and NANCY LEWIS, an individual,

Defendants

---

### COMPLAINT AND JURY DEMAND

---

COME NOW the Plaintiffs, Angelika Carnes ("Ms. Carnes"), Hirotsune Takahashi ("Mr. Takahashi") and Mi "Michelle" Joung ("Ms. Joung"), by and through their attorneys, Miller & Law, PC, and for their Complaint against the Defendants, the Colorado Organization for Victim Assistance ("COVA") and Nancy Lewis ("Ms. Lewis"), state as follows:

### NATURE OF THE ACTION

This action is brought to redress COVA's violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§2000e–2000e-17, through its discriminatory and retaliatory actions, as well as to redress defamatory statements made by the Defendants regarding Mr. Takahashi and Ms. Carnes. Specifically, the Plaintiffs, who respectively are of Colombian/Japanese, German and Korean origin, allege that COVA engaged in unlawful employment practices on the basis of their race and national origin, as well as on the basis of Mr. Takahashi's status as a male, and that COVA retaliated against Ms. Carnes and Ms. Joung for being named as witnesses in Mr. Takahashi's administrative proceeding as well as for lodging

their own EEO complaints, engaged in harassment by creating and escalating a hostile work environment, and terminated the Plaintiffs' employment, all in violation of Title VII.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1343, based on Plaintiffs' claims for relief under 29 U.S.C. §626(c), Section 706 of Title VII of the Civil Rights Act of Title VII, as amended.

2.      This Court has supplemental jurisdiction of Plaintiffs' state law claims, which form part of the same case or controversy, pursuant to 28 U.S.C. § 1367(a).

3.      The unlawful employment practices and defamatory acts alleged herein were committed within the jurisdictional boundaries of the United States District Court for the District of Colorado and venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3).

## ADMINISTRATIVE PREREQUISTIES

4.      Prior to filing this Complaint, Plaintiffs have complied with all procedural prerequisites for bringing this lawsuit.  They collectively and timely filed a total of five (5) charges of employment discrimination with the Colorado Civil Rights Division ("CCRD") and the United States Equal Employment Opportunity Commission ("EEOC"), collectively, each of which occurred within 300 days of the subject discrimination and/or retaliation.

5.      Each Plaintiff has been issued a Notice of Right to Sue from the EEOC and CCRD with respect to all of their respective charges of employment discrimination against COVA.

6.      The filing date of this Complaint is within 90 days of the effective dates of the Notices of Right to Sue that were issued to Ms. Joung.

7.     Following Mr. Takahashi's receipt of a Notice of Right to Sue dated April 17, 2019, between July 15, 2019 and February 14, 2020, Mr. Takahashi and COVA entered into a series of tolling agreements, through which Mr. Takahashi's deadline for commencing litigation regarding his claims presented herein was tolled until 11:59 pm on April 17, 2020.

8.     Following Ms. Carnes's receipt of Right-to-Sue Notices in January 2020, Ms. Carnes and COVA entered into a tolling agreement, through which Ms. Carnes' deadline for commencing litigation regarding her claims presented herein was tolled until 11:59 pm on April 17, 2020.

9.     As this Complaint has been filed within the 90-day periods (as extended by mutual agreement of the parties with respect to the claims of Mr. Takahashi and Ms. Carnes) following the Plaintiffs' respective receipt of their Notices of Right to Sue, Plaintiffs have satisfied all procedural prerequisites for suing COVA in federal court under 42 U.S.C. §2000e-5(f)(1).

## **PARTIES**

10.     Ms. Carnes is an individual resident of Colorado with a residential address of 2336 Forest St., Denver, CO 80207.

11.     Ms. Carnes is a Caucasian woman of German national origin.

12.     Mr. Takahashi is an individual resident of Colorado with a residential address of 1375 Jersey St., Denver, CO 80220.

13.     Mr. Takahashi is an Asian man of Colombian and Japanese national origin.

14.     Ms. Joung is an individual resident of Colorado with a residential address of 3194 South Danube St., Aurora, CO 80013.

15.     Ms. Joung is an Asian woman of Korean national origin.

16.     COVA is a Colorado non-profit corporation, with its headquarters located at 1325 S. Colorado Blvd., Ste. 508B, Denver, CO 80222.  COVA employs more than 15 employees.

17.     Ms. Lewis is an individual resident of Colorado with a residential address of 400 W. 3rd Avenue, Broomfield, CO 80020.

18.     At all times relevant to this litigation, Ms. Lewis has been COVA's Director.

## GENERAL ALLEGATIONS

### A.  COVA's February 5, 2018 Termination of Hirotsune Takahashi

19.     After serving as an intern since January 2015 Mr. Takahashi began his employment with COVA as a full-time Case Manager on March 16, 2015.

20.     During his employment, Mr. Takahashi was the only Colombian employee at COVA.

21.     During his employment, Mr. Takahashi was the only male employee at COVA.

22.     Mr. Takahashi flourished in the performance of his job at COVA.

23.     Overall, Mr. Takahashi experienced no issues in the workplace, although one female coworker ("A.S.") blatantly disliked him and began harassing him in late 2017, becoming combative and insubordinate.

24.     Mr. Takahashi reported his concerns of harassment regarding A.S. to the attention of COVA's management in December 2017.

25.     Upon information and belief, COVA took no meaningful steps to investigate or address the harassment that Mr. Takahashi had reported.

26.     On February 5, 2018, Mr. Takahashi was terminated from his employment due to groundless allegations - primarily presented as hearsay by A.S. - that Mr. Takahashi had either used or sold cocaine two months earlier, in December 2017.

27.     At no time did COVA engage in any meaningful diligence to investigate or determine the truth of these serious and suspect allegations against Mr. Takahashi prior to

terminating his almost three-year employment.

28.     COVA did not perform a drug test on Mr. Takahashi, despite his offer to allow COVA to do so.

29.     COVA did not search Mr. Takahashi's home, car or office, either, despite his offers to allow COVA to do so.

30.     COVA's justification for the termination was its subjective and unsubstantiated "belief" that Mr. Takahashi had previously been in possession of cocaine.

31.     Notwithstanding the prior issues that Mr. Takahashi had reported regarding A.S., and although A.S. was not present during the alleged event and had no personal knowledge regarding the cocaine allegation or of any relevant facts, COVA relied primarily on a hearsay statement from A.S. as to what another female COVA employee ("K.E.") supposedly had seen in December 2017.

32.     Mr. Takahashi and K.E. had been friends outside of the workplace, and in December 2017, he and K.E. had spent time at his house, where K.E. tried on a coat belonging to Mr. Takahashi.

33.     K.E. noticed Mr. Takahashi's rent money in one of the coat pockets – roughly eight hundred dollars in cash – because he had not yet requested a money order to pay his rent, and he has a habit of storing money within the pockets of his clothes.

34.     K.E. also supposedly found cocaine in Mr. Takahashi's coat pocket that December evening; her allegations in this regard are plagued by contradictions, including whether it was a "bag of cocaine" or "brick of cocaine" that she supposedly pulled out of the coat pocket, or whether it instead was a "glass food storage container full of white powder" that she had found.

35.     On information and belief, A.S. instigated the matter and pushed K.E. to

manufacture allegations against Mr. Takahashi.

36.     It was A.S. who called Ms. Lewis during the evening of January 26, 2018 to report the allegations against Mr. Takahashi.

37.     That report followed a lunch on January 26, 2018 between A.S. and K.E. (which was not mentioned in K.E.'s July 31, 2018 statement six months later), both of whom were observed by Ms. Carnes to have acted very strangely upon their return to the office, with A.S. frequently hovering over K.E.

38.     A.S. waited until after Ms. Carnes had left the office late in the day on January 26, 2018 before calling Ms. Lewis to make the accusations regarding Mr. Takahashi.

39.     Upon learning of the allegations against Mr. Takahashi, both Sterling Harris, who is COVA's Chief Deputy Director ("Ms. Harris"), and Ms. Carnes initially expressed virtually identical reactions to the allegations to Ms. Lewis: that they were not believable and that they instead had been instigated by A.S. and K.E. for the sole purpose of facilitating Mr. Takahashi's termination.

40.     Ms. Harris was aware that K.E. had made a racially insensitive remark regarding Mr. Hirotsune in 2017.

41.     Inexplicably, and in the absence of any evidence supporting the allegations against Mr. Takahashi, Ms. Harris subsequently reversed course and went along with Ms. Lewis' preconceived determination of his guilt.

42.     Ms. Harris accused Ms. Carnes of wearing "rose-colored glasses" because Ms. Carnes did not see "what everyone else sees" regarding Mr. Takahashi – as well as regarding Ms. Joung.

43.     Ms. Harris persisted in her belief that Mr. Takahashi was guilty even after learning

that K.E. had provided materially different versions of events regarding Mr. Takahashi, including K.E.'s report to Ms. Carnes that her visit to Mr. Takahashi's home had occurred in November 2017, rather than on December 30, 2017, as K.E. informed Ms. Harris.

44.     K.E. had also reported to Ms. Lewis that she had allegedly seen the money and cocaine when she was with Mr. Takahashi "at a party," but separately maintained that this had occurred when Mr. Takahashi invited her to his home after the two of them had gone out to dinner.

45.     On January 29, 2018, COVA requested that Mr. Takahashi attend a meeting with Ms. Lewis and Scott Turner, an attorney who is affiliated with COVA.

46.     During that meeting, Mr. Takahashi was surprised to learn about the allegations against him, which he denied.

47.     Mr. Takahashi expressed concern to Ms. Lewis and Mr. Turner that the allegations were being made against him because he is Colombian.

48.     Mr. Takahashi had previously accused Ms. Harris of discrimination in 2016.

49.     Mr. Takahashi also inquired whether the allegations had something to do with A.S. and K.E., as (i) A.S. and K.E. had recently become very secretive and close to one another at work, and (ii) A.S. knew that she was on the verge of being fired, after having recently been insubordinate and disrespectful to Ms. Carnes (A.S. indeed was terminated by Ms. Lewis on the following day, January 30, 2018).

50.     Ms. Lewis admitted she had no evidence to support the allegations, but asserted that she "without a doubt" believed the allegation that K.E. had found cocaine in Mr. Takahashi's coat.

51.     Ms. Lewis grilled Mr. Takahashi as to his alleged cocaine use, demanding that he answer questions such as whether Mr. Takahashi "did coke," if his friends "did coke," and if he

"associate[s] with people who do coke."

52.     Mr. Takahashi answered "no" to each of Ms. Lewis's questions.

53.     Mr. Takahashi was not provided with any opportunity to rebut the accusations.

54.     Mr. Takahashi offered to complete a drug test, and he not only offered to allow COVA to search his person, office, car, and home, he requested that COVA do so.

55.     COVA repeatedly accused Mr. Takahashi of selling cocaine and possessing a "brick of cocaine," notwithstanding that a critical fact upon which the allegations were premised was plagued by a major inconsistency in K.E.'s story: whether the alleged "large portion of cocaine" that she claims to have found and held in her hand was in a "plastic bag" or a "glass container."

56.     Upon information and belief, had K.E. actually found a "large portion of cocaine," she should have been able to recall the type of container that the cocaine was in, without any difficulty or fluctuation.

57.     Ms. Lewis had jumped to a conclusion about Mr. Takahashi's guilt long before speaking with him; she asserted to Ms. Carnes around 10:00 am on January 27, 2018 that Mr. Takahashi's accuser was "a credible, reliable source" whom Ms. Lewis believed.

58.     Ms. Lewis admitted to unequivocally believing K.E.'s allegation – as primarily stated by A.S. - while simultaneously conceding to Mr. Takahashi and others that she had no evidence to support the allegation.

59.     COVA placed Mr. Takahashi on what it indicated would be a month-long administrative leave, during which Mr. Takahashi was led to believe that an investigation would ensue.

60.     Mr. Takahashi believed that COVA would take the necessary steps to verify the

falsity of the accusations.

61.     As it turned out, COVA did nothing to verify the truth of the allegations, and instead terminated Mr. Takahashi one week later, largely based on the hearsay statement of a female colleague known to have an axe to grind with him (and who was perfectly capable of manipulating K.E.), in the absence of any actual evidence or a consistent narrative.

62.     Mr. Takahashi's employment at COVA – which for almost three years had been entirely free of any performance or behavioral issues on his part - thus came to an abrupt end.

63.     Adding insult to injury, Ms. Lewis had called a staff meeting on January 30, 2018, during which she revealed to the entire staff the accusations that had made against Mr. Takahashi.

64.     Ms. Lewis had further informed the staff that Mr. Takahashi had been placed on a one-month leave.

65.     The reasons offered by COVA for Mr. Takahashi's termination were not its true reasons, but instead were a pretext for discrimination.

66.     COVA's cited justifications – both before and after-the-fact - for terminating Mr. Takahashi's employment were based entirely on stereotypes and biases, and not facts.

67.     In handling and investigating this disciplinary matter, COVA presumed that Mr. Takahashi, as a Colombian male, was not telling the truth.

68.     COVA also engaged in pre-termination efforts to manufacture additional grounds to support Mr. Takahashi's termination.

69.     Specifically, COVA had approached Ms. Joung – who was then employed as an intern at COVA - shortly prior to Mr. Takahashi's termination, fishing for a statement that he had harassed Ms. Joung (sexually or otherwise) - in the absence of any evidence.

70.     Ms. Joung was very uncomfortable with COVA's line of questioning, and she

informed Ms. Lewis and Ms. Harris that she had an excellent, professional relationship with Mr. Takahashi and had never observed any inappropriate behavior.

71.     Ms. Harris separately remarked to Ms. Carnes that she believed that Mr. Takahashi had been "flirting" with all of HTP interns as well, conveying her belief that such "flirting" by a male employee was inappropriate, yet COVA took no action later in 2018 when a male employee reported that K.E. had been sexually harassing him; Ms. Lewis suggested that he should "man up."

72.     During his employment, as well as in terminating his employment, COVA treated Mr. Takahashi in a disparate fashion than one or more similarly-situated non-Colombian colleagues.

73.     During his employment, as well as in terminating his employment, COVA treated Mr. Takahashi in a disparate fashion than one or more similarly-situated female colleagues.

74.     Ms. Lewis and many COVA employees have displayed bias against men, including through hiring decisions as well as through disparaging remarks about men generally, such as that all men are bad.

75.     Prior to his termination, Mr. Takahashi had made a complaint about A.S. and requested help, and then specifically complained of discrimination based on his Colombian ethnicity to COVA's Director and its legal counsel.

76.     Not only did COVA take no action regarding either one of his January 2018 complaints, it fired Mr. Takahashi one week later.

77.     Ms. Harris then admitted to Ms. Carnes that COVA had mishandled its response to the accusations against Mr. Takahashi.

**B.   Mr. Takahashi's Identification of Mi Joung & Angelika Carnes as CCRD Witnesses**

78.     Mr. Takahashi filed a Charge of Discrimination (as subsequently amended), which

was primarily handled by the CCRD, through which he alleged that COVA unlawfully discriminated and retaliated against him based on his race, national origin, and gender, by placing him on administrative leave and terminating him prior to the conclusion of that leave, by treating him less favorably than his female peers and by relying on negative stereotypes about Colombians and cocaine to terminate Mr. Takahashi as a Colombian-Japanese man

79.     COVA engaged in post-termination efforts to manufacture additional grounds to support Mr. Takahashi's termination.

80.     Following his termination, COVA maintained that Mr. Takahashi had violated COVA's drug and alcohol policy, and that this had contributed to the termination.

81.     In fact, that policy is inapplicable to the allegations against Mr. Takahashi, as it solely prohibits "the possession, use, sale or reporting to work impaired by or under the apparent influence of alcoholic beverages or drugs on COVA premises".

82.     During the pendency of CCRD proceedings, on July 13, 2018, Ms. Lewis called another staff meeting, during which she announced that Mr. Takahashi was "suing COVA."

83.     Ms. Lewis informed the staff on July 13, 2018 that Mr. Takahashi was "guilty" of the allegations and that he had "lied to her" when she questioned him about this.

84.     Ms. Lewis speculated to the staff that Mr. Takahashi had filed the Charge of Discrimination because he was "hurt," and she claimed that he was either looking to get his job back or seeking compensation, and she declared that she would not provide him with either type of relief.

85.     During the CCRD proceedings, after Ms. Lewis had omitted both Ms. Carnes and Ms. Joung from COVA's Position Statement, and had not sought affidavits from either of them, Mr. Takahashi identified Ms. Carnes and Ms. Joung as witnesses on September 14, 2018.

86.     Specifically, Ms. Carnes, who was COVA's Program Director of Human Trafficking and who had been Mr. Takahashi's supervisor, was identified as having knowledge about his performance and his work issues with A.S., and as a witness who could rule out any evidence or symptoms of his alleged drug use or drug dealing.

87.     Ms. Lewis had also opted not to involved A.S. during the CCRD proceedings, asserting to Ms. Carnes that she was worried that A.S. would "join" in Mr. Takahashi's claim.

88.     Ms. Joung was identified by Mr. Takahashi in the CCRD proceedings as having personal knowledge about the work-related issues that he had experienced with A.S. as well as regarding COVA's attempts to coerce Ms. Joung into claiming that Mr. Takahashi had harassed her (sexually or otherwise) while he was still employed there.

89.     It was promptly after this identification that Ms. Carnes and Ms. Joung began experiencing escalated, direct retaliation by COVA, which came to a head at the annual COVA Conference in October 2018 and during the two months that followed.

**C.  COVA's Retaliation Against Ms. Carnes as a Witness in the CCRD Proceeding and as an EEO Complainant**

90.     Notably, the retaliation experienced by Ms. Carnes commenced shortly after she had been praised by Ms. Lewis for Ms. Carnes' great work and her efforts in COVA being awarded a $925,000 OVC grant, and after Ms. Lewis had specifically recognized Ms. Carnes' professionalism in that regard.

91.     Had the performance of Ms. Carnes and her Human Trafficking Program Team (the "Team") actually been poor, as COVA currently maintains, COVA would not have been awarded another OVC grant in 2018, especially not for $925,000.

92.     During a site visit on April 19-20, 2018, the grant monitor, Kristin Weschler, expressed extreme pleasure with the work that the Team was doing and complimented them

immensely; had the Team been performing poorly, COVA's large OVC grant would not have materialized.

93.     Just one week later, however, everything about their employment at COVA changed for Ms. Carnes and Ms. Joung.

94.     Ms. Lewis informed Ms. Carnes on October 5, 2018 that Mr. Takahashi had named both Ms. Carnes and Ms. Joung as witnesses in his Charge of Discrimination.

95.     Ms. Carnes explained that she did not know anything different about Mr. Takahashi's situation than what had been previously discussed in early 2018.

96.     When Ms. Lewis probed further regarding Ms. Carnes' knowledge of the matter, Ms. Carnes responded that she would not lie for Ms. Lewis, for COVA or for Mr. Takahashi, and she reiterated that she felt that Mr. Takahashi's termination had been unfair.

97.     In the wake of that meeting, COVA began systematically excluding, isolating and marginalizing Ms. Carnes and Ms. Joung, interspersed with harassment and micromanagement.

98.     Ms. Harris on numerous occasions criticized Ms. Carnes for having a "blunt" and "curt" conversation style, which Ms. Harris told her "must be from your German culture."

99.     Ms. Lewis also remarked to Ms. Carnes out of the blue, during a meeting in Ms. Lewis' office in October 2018, that Ms. Carnes carries herself "differently" than other women and is "intimidating" to women.

100.    When Ms. Carnes inquired with Ms. Lewis about this remark, Ms. Lewis declined to elaborate or explain herself.

101.    During the middle of the annual COVA Conference on October 27-31, 2018 (the "Conference"), COVA's management - Ms. Lewis and Ms. Harris - began blatantly ignoring and marginalizing Ms. Carnes in front of others at the Conference.

102.    Among countless examples of unsubstantiated allegations fabricated by COVA, COVA falsely attempted to portray Ms. Carnes as having spent the bulk of her time at the Conference engaging in subversive and insubordinate gossiping, even though the actual timeline of events at the Conference reveals that such a claim was preposterous.

103.    On November 1, 2018, Ms. Lewis – who took over for Ms. Harris as Ms. Carnes' supervisor starting that day – vaguely discussed the Conference with Ms. Carnes and indicated that she did not think that she could remedy "the situation."

104.    Ms. Carnes still did not know what "situation" Ms. Lewis was referencing or what had resulted in the humiliating mistreatment to which Ms. Carnes had been subjected at the Conference.

105.    Ms. Lewis never directly identified anything that Ms. Carnes supposedly had done or said at the Conference that was improper.

106.    Rather than addressing the matter directly with Ms. Carnes, Ms. Lewis set out to attack Ms. Carnes on the presumption that she was guilty of some undisclosed misconduct; this was reminiscent of the sham, one-sided "investigation" that Ms. Lewis conducted that led to Mr. Takahashi's termination.

107.    Ms. Lewis threatened to fire Ms. Carnes and/or Ms. Harris, but then she later revealed to Ms. Joung that she was considering whether to close the Human Trafficking program altogether.

108.    At 1:37 pm November 1, 2018, Ms. Lewis sent a text message to Ms. Carnes requiring that Ms. Carnes and the entire Team work from home or take time off during the following week; no explanation was given for this directive.

109.    The Team was required to work from home and to conduct meetings offsite, even

though their client documents were in the COVA office.

110.     Ms. Carnes then complained to COVA management that she was being retaliated against as an employee who was participating in an investigation into the discrimination of others, as well as for having spoken out about discriminatory practices.

111.     Other Team members made internal complaints of retaliation to Ms. Lewis on or about November 7, 2018 as well.

112.     Ms. Joung's complaint to Ms. Lewis, dated November 7, 2018, stated:

I am writing this email to express my discontent with the recent decision to have me and my team work from home from November 5, 2018 to November 12, 2018. Since working from home, my responsibilities to provide for my clients has proven to be a challenge as I have limited access to files and items that are only available in the office.

I fear that my position as a case manager is in jeopardy, especially given the recent events following the COVA conference. I had expressed to you in confidence, my struggles and frustrations that stem from around [] the beginning of the year.

I feel that the recent actions made against me were retaliatory, especially after I was made aware that I would be named as a witness on behalf of Hirotsune in the current EEOC claim against COVA. I still stand by my belief that the allegations and action taken against Hirotsune were unfair. I also do not know what occurred at the COVA conference to account for the decision for the HT staff to be forced to take vacation time or work from home.

I wish to fully express my concerns without the fear of reprisal. I wish to be able to return to the office, continue working with the program, and to continue in providing for our clients.

If there is anyone else that I should send this email to, please let me know and I will address my concerns with them as well.

113.     COVA never responded to any of the Team's internal complaints of retaliation.

114.     Within a week of Ms. Carnes' complaint, COVA placed her on a Performance Improvement Plan on November 13, 2018, after notifying her by email on November 12, 2018 that the entrance locks to the COVA offices had been changed.

115.     Although Ms. Lewis subsequently maintained that the November 13 action was a

"Final Written Warning," an audio recording from that meeting reveals that Ms. Lewis instead had described the action as a "Performance Plan."

116.    The written disciplinary letter issued by COVA explicitly reprimanded Ms. Carnes for "openly criticiz[ing] COVA for its termination of an employee because of suspected drug possession", and threatened immediate termination if Ms. Carnes continued to engage in such behavior.

117.    Upon their return to COVA's offices on November 13, 2018, the Team found that the main entrance to the offices was locked, their keys did not work, and they were unable to access their computers or voicemail.

118.    When Ms. Joung was able to access her voicemail, she had received a message that indicated that "a password attempt had been made."

119.    Although the Team had not been terminated as COVA employees, they had been locked out of their offices and cut off from critical tools and resources that they needed to efficiently perform their jobs.

120.    Ms. Carnes filed her original Charge of Discrimination on the same day, November 13, 2018.

121.    COVA then further retaliated against Ms. Carnes by threatening to rescind the grant money that had been awarded for the next fiscal year, by telling coworkers that the Team would be shut down, marginalizing and excluding Ms. Carnes from key decision-making and other communications, interfering in her ability to perform her job, engaging in micromanagement, falsely accusing the Team of having created hostile work environment through their objections to harassment and discriminatory treatment, and continuing to dwell on the subject of Ms. Carnes' opinions regarding Mr. Takahashi's termination and his administrative Charge.

122.    Ms. Lewis also revealed the allegations of the written disciplinary letter to others at COVA (such as Amy McCarthy) who were not in Ms. Carnes' chain-of-command.

123.    COVA began demanding that Ms. Carnes submit a weekly schedule.

124.    Whereas the rest of the COVA staff members were allowed to leave the office early (30-90 minutes) on a consistent basis, starting in November 2018, the Team was not afforded similar latitude.

125.    On November 27, 2018 Ms. Lewis informed Ms. Carnes that she had told the OVC that she could no longer transfer the Human Trafficking Program to Ms. Carnes' business entity (Rivonia, Inc.), because Ms. Carnes had "created bad work relationships in the community," specifically with two organizations, RMIAN and CLS.

126.    In December 2018 COVA excluded Ms. Carnes from communications regarding the Colorado Federally Funded Anti-Trafficking Grantees and Partners meeting.

127.    At 9:40 am on December 11, 2018 while the annual COVA board meeting was taking place, Ms. Lewis closed the door connecting the Team's offices to the rest of the COVA staff offices; this door had never before been closed.

128.    Although the Team traditionally had participated in the annual COVA board meeting, the Team was excluded from the December 2018 board meeting, and precluded from discussing their program.

129.    On December 17, 2018 Ms. Lewis suddenly required, without any advance notice, that all members of the Team would need to exhaust all of their remaining flex time during the final two weeks of the calendar year.

130.    On December 29, 2018, COVA placed the entire Team on unpaid administrative leave and directed them not to come into COVA's offices.

131.    Contrary to Ms. Lewis' subsequent contentions, the Team had adequately met their clients' needs and provided outstanding victim services up until the Team was no longer allowed in the office on December 29, 2018.

132.    On January 1, 2019 Ms. Carnes learned from an acquaintance that Ms. Harris been informing others that the Team was being "furloughed."

133.    COVA never informed Ms. Carnes as to the status of her employment or leave or provided an update as to how the January 25, 2019 end of the government shutdown affected the claimed "need" to keep Ms. Carnes and her Team on unpaid administrative leave.

134.    Ms. Carnes was treated by COVA in a disparate and harassing fashion that severely impacted her reputation and standing inside and outside of the organization, including through the disclosure of confidential information regarding Ms. Carnes' employment.

135.    Ms. Carnes was shocked to learn from a colleague, Sara Nadelman, that Ms. Harris had announced to the Human Trafficking Council on January 4, 2019 – while Ms. Carnes was still employed by COVA - that the Human Trafficking program would no longer be transferred to Ms. Carnes' organization, Rivonia, Inc.

136.    COVA marginalized Ms. Carnes and Ms. Joung in front of the COVA staff as well as other victim services organizations.

137.    On April 2, 2019, after over three months of extended unpaid leave, COVA abruptly terminated the entire Team – including Ms. Carnes and Ms. Joung – describing the termination as a "workforce reduction."

138.    On April 2, 2019, COVA posted Ms. Carnes' position as a full-time human trafficking program case manager position.

139.    One month after the terminations, COVA re-posted the Team's job positions.

**D.** **COVA's Retaliation Against Ms. Joung as a Potential Witness Regarding Mr.**
**Takahashi's Termination, as a Witness in his CCRD Proceeding and as an EEO**
**Complainant**

140.    Ms. Joung engaged in three separate protected activities: (i) being questioned by
COVA regarding her interactions with Mr. Takahashi in early 2018, (ii) being named as a witness
in Mr. Takahashi's administrative proceeding in the fall of 2018, and filing her own CCRD Charge
on December 6, 2018.

141.    In particular, on January 30, 2018, Ms. Joung was interrogated by Ms. Lewis and
Ms. Harris about having a romantic affair with Mr. Takahashi and about the drug-related
allegations against him.

142.    Ms. Joung strongly objected numerous times to these accusations and noted that
there had never been any instances of inappropriate behavior with Mr. Takahashi, a response that
did not sit well with Ms. Harris.

143.    Ms. Lewis and Ms. Harris were dismissive of the information that Ms. Joung
provided.

144.    Ms. Lewis and Ms. Harris admitted to Ms. Joung that they had made assumptions
regarding Mr. Takahashi's supposed flirtatious behavior.

145.    On February 1, 2018, Ms. Joung called Ms. Lewis to express her discontent with
COVA's interrogation of her, explaining that the questioning had felt like an attack that was based
upon the preconceived notions of Ms. Lewis and Ms. Harris regarding Ms. Joung's working
relationship with Mr. Takahashi.

146.    Ms. Harris was in the office at the time of Ms. Joung's call and became extremely
angry with Ms. Joung for having reported these concerns.

147.    When Ms. Joung was next in the office several days later, on or about February 5,

2018, Ms. Harris acted in a hostile manner to Ms. Joung, ignoring her multiple attempts to make conversation and instead walking directly away from her, as if Ms. Joung did not exist.

148.    Ms. Harris thereafter complained to Ms. Carnes about Ms. Joung's behavior and sensitivity and announced that she would not "walk on eggshells" around Ms. Joung in the office.

149.    Ms. Harris further disclosed that she did not like that Ms. Joung did not often make eye contact with her, and that she could not tell what Ms. Joung was thinking.

150.    When Ms. Carnes reminded Ms. Harris that this was a product of Ms. Joung's Korean culture – in which direct eye-contact can be viewed as a challenge of authority and can be considered rude or disrespectful - Ms. Harris responded that she does not care about Ms. Joung's culture.

151.    Ms. Harris also remarked to Ms. Carnes that she did not want Ms. Joung to be hired as an HTP case manager.

152.    Several weeks later, in March 2018, Ms. Harris expressed a strong objection to Ms. Joung's potential promotion to COVA staff, instead of remaining an intern, even though both Ms. Carnes and Ms. Lewis felt that Ms. Joung was a perfect candidate for the position.

153.    Despite having taken on full Case Manager responsibilities as an intern since late January 2018 while still receiving intern-level pay ($8.25/hour), Ms. Joung was not promoted to the Case Manager position until April 2, 2018, for which the posted annual salary was between $40,000 and $45,000 annually (comparable to an hourly wage of $20.00 to $23.00).

154.    Shortly after having been identified as a favorable witness for Mr. Takahashi in his administrative Charge, Ms. Joung was forced by COVA to work from home and prevented from returning to COVA's offices from November 1 to November 12, 2018.

155.    Then, exactly one day after the CCRD had processed Ms. Joung's first Charge of

Discrimination on December 28, 2018 (Ms. Joung had originally initiated her Charge on December 6, 2018) and notified COVA, COVA placed Ms. Joung on unpaid leave on December 29, 2018.

156.     COVA did not provide any direct notice of the unpaid leave to Ms. Joung, who only learned of the leave through Ms. Carnes.

157.     Although COVA claimed that the leave was necessitated by the government shutdown, it did not restore Ms. Joung or Ms. Carnes to active employment even following the end of the government shutdown on January 25, 2019.

158.     Ms. Joung thereafter was terminated on April 2, 2019, having received no interim updates from COVA regarding her employment status.

### E.  Defendants' Defamation *Per Se* Against Mr. Takahashi

159.     Not only did the Defendants terminate Mr. Takahashi's employment, they engaged in numerous acts of defamation *per se* against him by repeatedly informing individuals both inside and outside of the organization that Mr. Takahashi had engaged in the possession and/or sale of illegal drugs.

160.     Ms. Lewis admitted to Ms. Carnes that she had informed Rosa M. Vergil Garcia, the Executive Director of a third-party victim services organization (Una Mano), that Mr. Takahashi was suing COVA because "he had been fired for drug possession."

161.     Ms. Lewis also told one or more non-management COVA employees in November 2018 that Mr. Takahashi had sold or used cocaine.

162.     Upon information and belief, one or both of the Defendants have made additional similar or identical defamatory statements involving Mr. Takahashi following his termination.

163.     Upon information and belief, Ms. Lewis has made such defamatory statements involving Mr. Takahashi in an individual capacity as well as in her capacity as COVA's Director.

164.    Such defamatory statements published by the Defendants pertain to Mr. Takahashi supposedly having committed a crime.

165.    Those statements were false at the time that they were published, and the Defendants knew or reasonably should have known that the statements were false.

166.    Mr. Takahashi did not become aware of the defamatory statements until 2019; his potential defamation claims are subject to tolling agreements between the parties entered into in November 2019, January 2020 and February 2020.

167.    As a direct and proximate result of the Defendants' publication of the defamatory statements, Mr. Takahashi has been significantly damaged.

F.  **Defendants' Defamation Against Ms. Carnes**

168.    Upon information and belief, the Defendants have published defamatory statements regarding Ms. Carnes to individuals both inside and outside of COVA, perhaps dating back to mid-2018.

169.    Upon information and belief, such defamatory statements have referenced Ms. Carnes, either directly or indirectly through her business entity, Rivonia, Inc.

170.    Upon information and belief, such defamatory statements were false at the time that they were published, and the Defendants knew or reasonably should have known that such statements were false.

171.    Upon information and belief, Ms. Lewis has made such defamatory statements involving Ms. Carnes in an individual capacity as well as in her capacity as COVA's Director.

172.    Upon information and belief, as a direct and proximate result of the Defendants' publication of such defamatory statements, Ms. Carnes has been significantly damaged.

## CLAIMS FOR RELIEF

### First Claim For Relief
### Discrimination Against Mr. Takahashi Based on Race or National Origin
### in Violation of Title VII (by COVA)

173.    Plaintiffs incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

174.    At all times relevant to this Complaint, Mr. Takahashi satisfactorily performed the functions and requirements of his job.

175.    COVA, either directly or by and through its agents, discriminated against Mr. Takahashi during his employment on the basis of his race or national origin, as described herein.

176.    COVA's purported rationale for Mr. Takahashi's termination is merely a pretext for its discrimination against Mr. Takahashi.

177.    Upon information and belief, COVA's termination of Mr. Takahashi was motivated by discriminatory animus toward Mr. Takahashi as a Colombian man.

178.    COVA is liable for the acts and/or omissions of its agents and employees.

179.    COVA's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Mr. Takahashi's federally protected rights.

180.    As a consequence of COVA's illegal conduct, Mr. Takahashi suffered, and continue to suffer, irreparable injury and damages.

### Second Claim For Relief
### Discrimination Against Mr. Takahashi Based on Gender
### in Violation of Title VII (by COVA)

181.    Plaintiffs incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

182.    COVA, either directly or by and through its agents, discriminated against Mr.

Takahashi during his employment on the basis of his male gender, as described herein.

183. Upon information and belief, COVA's termination of Mr. Takahashi was motivated by discriminatory animus toward Mr. Takahashi as a Colombian man.

184. COVA's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Mr. Takahashi's federally protected rights.

185. As a consequence of COVA's illegal conduct, Mr. Takahashi suffered, and continue to suffer, irreparable injury and damages.

**Third Claim For Relief**
**Defamation Against Mr. Takahashi (by COVA and Ms. Lewis)**

186. Plaintiffs incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

187. COVA and Ms. Lewis published or caused to be published one or more defamatory statements regarding Mr. Takahashi.

188. The defamatory statement(s) pertained to Mr. Takahashi supposedly having committed a crime.

189. The statement(s) published by one or both of the Defendants was/were false at the time that the statement(s) was/were published.

190. At the time of publication by one or both of the Defendants, the publishing party or parties knew or reasonably should have known that the statement(s) was/were false.

191. Contrary to the Defendants' allegations, Mr. Takahashi neither possessed, nor used, nor sold cocaine.

192. The cessation of Mr. Takahashi's employment at COVA did not relate to any actual possession, use or sale of cocaine by Mr. Takahashi.

193.    The publication of any communication that Mr. Takahashi had been terminated from COVA because he had possessed, used or sold of cocaine would be patently false and defamatory *per se*.

194.    As a direct and proximate result of the publication of the defamatory statement(s), Mr. Takahashi has been damaged.

### Fourth Claim For Relief
### Discrimination Against Ms. Carnes Based on Race or National Origin
### in Violation of Title VII (by COVA)

195.    Plaintiffs incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

196.    At all times relevant to this Complaint, Ms. Carnes satisfactorily performed the functions and requirements of her job.

197.    COVA, either directly or by and through its agents, discriminated against Ms. Carnes during her employment on the basis of her race or national origin, as described herein.

198.    COVA's purported rationale for Ms. Carnes' termination is merely a pretext for its discrimination against Ms. Carnes.

199.    Upon information and belief, COVA's termination of Ms. Carnes was motivated by discriminatory animus toward Ms. Carnes as a woman of German national origin, as reflected by the specific remark about her German culture that was made by Ms. Harris and the unexplained remark that Ms. Carnes was "intimidating" that was made by Ms. Lewis.

200.    COVA is liable for the acts and/or omissions of its agents and employees.

201.    COVA's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Ms. Carnes' federally protected rights.

202.    As a consequence of COVA's illegal conduct, Ms. Carnes suffered, and continue

to suffer, irreparable injury and damages.

## Fifth Claim For Relief
## Retaliation Against Ms. Carnes in Violation of Title VII (by COVA)

203. Plaintiffs incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

204. Ms. Carnes was subjected to retaliation by COVA for participating in a complaint about discriminatory actions in the workplace, as well as for raising her own complaints about discriminatory actions in the workplace, in violation of 42 U.S.C. §2000e-3, including through being terminated from her employment.

205. Ms. Carnes' protected conduct was a motivating factor in COVA's retaliatory conduct in terminating Ms. Carnes' employment.

206. COVA's asserted reason for terminating Ms. Carnes' employment was a pretext for illegal retaliation by COVA and/or its agents.

207. COVA's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Ms. Carnes' federally protected rights.

208. As a consequence of COVA's illegal conduct, Ms. Carnes suffered, and continues to suffer, irreparable injury and damages.

## Sixth Claim For Relief
## Defamation Against Ms. Carnes (by COVA and Ms. Lewis)

209. Plaintiffs incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

210. Upon information and belief, COVA and Ms. Lewis have published or caused to be published one or more defamatory statements regarding Ms. Carnes.

211. Upon information and belief, such statement(s) was/were false at the time that

it/they was/were published.

212.    Upon information and belief, at the time of such publication by one or both of the Defendants, the publishing party or parties knew or reasonably should have known that such statement(s) was/were false.

213.    As a direct and proximate result of the publication of the defamatory statement(s), Ms. Carnes has been damaged.

<u>Seventh Claim For Relief</u>
<b>Discrimination Against Ms. Joung Based on Race or National Origin
in Violation of Title VII (by COVA)</b>

214.    Plaintiffs incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

215.    At all times relevant to this Complaint, Ms. Joung satisfactorily performed the functions and requirements of her job.

216.    COVA, either directly or by and through its agents, discriminated against Ms. Joung during her employment on the basis of her race or national origin, as described herein.

217.    COVA's purported rationale for Ms. Joung's termination is merely a pretext for its discrimination against Ms. Joung.

218.    Upon information and belief, COVA's termination of Ms. Joung was motivated by discriminatory animus toward Ms. Joung as an Asian woman of Korean national origin, as reflected by the specific remark about her Korean culture that was made by Ms. Harris.

219.    COVA is liable for the acts and/or omissions of its agents and employees.

220.    COVA's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Ms. Joung's federally protected rights.

221.    As a consequence of COVA's illegal conduct, Ms. Joung suffered, and continues

to suffer, irreparable injury and damages.

**Eighth Claim For Relief**
**Retaliation Against Ms. Joung in Violation of Title VII (by COVA)**

222.    Plaintiffs incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

223.    Ms. Joung was subjected to retaliation by COVA for participating in a complaint about discriminatory actions in the workplace, as well as for raising her own complaints about discriminatory actions in the workplace, in violation of 42 U.S.C. §2000e-3, including through being terminated from her employment.

224.    Ms. Joung's protected conduct in opposition to race-based discrimination was a motivating factor in COVA's retaliatory conduct in terminating Ms. Joung's employment.

225.    COVA's asserted reason for terminating Mr. Joung's employment was a pretext for illegal retaliation by COVA and/or its agents.

226.    COVA's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Ms. Joung's federally protected rights.

227.    As a consequence of COVA's illegal conduct, Ms. Joung suffered, and continues to suffer, irreparable injury and damages.

**Additional Claims For Relief**

228.    Plaintiffs reserve the right to add additional claims after discovery.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendants, and award Plaintiffs the following relief, to the fullest extent allowed by law:

i. Actual monetary damages for all injuries suffered by Plaintiffs in an amount to be determined at trial, including but not limited to, damages for lost past and future wages and employment benefits;

ii. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

iii. Attorneys' fees and costs, including expert witness fees, on all claims allowed by law;

iv. Pre- and post-judgment interest at the highest lawful rate; and

v. Any further relief that this court deems just and proper, and any other relief as allowed by law.

## JURY DEMAND

The Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 13th day of April 2020.

MILLER & LAW, PC

**/s/ David J. Meretta**
David J. Meretta, No. 44409
1900 W. Littleton Blvd.
Littleton, CO 80120
(303) 722-6500
(303) 722-9270 fax
djm@millerandlaw.com

ATTORNEYS FOR PLAINTIFFS